*The Council of Unit Owners of the Millrace Condominium, Inc., et al. v. Shapiro Sher Guinot & Sandler, P.A., et al.*, No. 58, September Term, 2025. Opinion by Eaves, J.

**COMMON LAW – MALICIOUS USE OF PROCESS – SPECIAL INJURY REQUIREMENT**

The Supreme Court of Maryland held that Petitioners—homeowners and their homeowners' associations who had successfully obtained dismissal of an underlying strategic lawsuit against public participation ("SLAPP") under Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-807—failed to state a claim of malicious use of process. Specifically, Petitioners failed to plead a "special injury," an element for a cause of action for malicious use of process. Litigation expenses, temporary diminution in property value, emotional distress, and an alleged chilling of constitutional rights associated with defending a meritless lawsuit do not differ in kind from the burdens that attend the defense of any civil action. They are not the kind of special injury, such as the arrest of the person or seizure of property, that a claim for malicious use of process requires.

The Court further declined to adopt a per se rule that the victims of a SLAPP inherently satisfy the special-injury element. Maryland's anti-SLAPP statute, CJP § 5-807, creates a procedural mechanism for the early dismissal of qualifying suits, but it neither provides a right to damages nor alters the elements of the common law tort of malicious use of process. The General Assembly has repeatedly considered and rejected proposals to expand the remedies available to defendants in a SLAPP, and any such expansion is a matter for the General Assembly to undertake.

IN THE SUPREME COURT

OF MARYLAND

No. 58

September Term, 2025

---

THE COUNCIL OF UNIT OWNERS OF THE
MILLRACE CONDOMINIUM, INC., ET AL.

v.

SHAPIRO SHER GUINOT & SANDLER, P.A.,
ET AL.

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

---

Opinion by Eaves, J.

---

Filed: July 13, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

A strategic lawsuit against public participation ("SLAPP") is a "meritless suit[] aimed at silencing a plaintiff's opponents, or at least at diverting their resources."[1] SLAPP plaintiffs are typically motivated by the desire "to chill a defendant's speech or protest activity and to discourage opposition by others."[2] While these suits often fail, "[t]he large damage amounts sought in SLAPPs[] . . . are staggering to unsophisticated, inexperienced parties[,]" and typically "forc[e] [defendants in a SLAPP] to back down[,]" achieving the SLAPP's ultimate goal of silencing its targets.[3] It is no surprise, then, that there are a variety of procedural and substantive responses to address the problems that SLAPPs present.[4]

Maryland has one such procedural response to SLAPPs, codified at § 5-807 of the Courts and Judicial Proceedings Article ("CJP") (2020 Repl. Vol.) of the Maryland Annotated Code. Under that statute, if a defendant believes that a plaintiff's suit is a SLAPP, then the defendant can, among another option not relevant here, move to have the SLAPP dismissed, "in which case the court shall hold a hearing on the motion to

---

[1] John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPS*, 26 Loy. L.A. L. Rev. 395, 396 (1993).

[2] *Id.* at 403.

[3] *Id.* (footnote omitted).

[4] *See id.* at 407–38.

dismiss as soon as practicable[.]"[5] If the defendant successfully proves that the suit is a SLAPP under CJP § 5-807, then the court may dismiss the SLAPP.

Maryland also recognizes the common law tort of malicious use of process, a civil cause of action whereby a plaintiff in a prior litigation "maliciously caus[es] . . . civil process to issue for its ostensible purpose, but without probable cause[.]"[6] For a plaintiff to prevail on a claim for malicious use of process in Maryland, they must prove five elements, one of which is that they suffered a "special injury" that ordinarily would not have resulted from the prior suit initiated by the individual who is now the defendant in the malicious use of process claim.[7] Claims for malicious use of process have been recognized as a substantive response to deter SLAPPs.[8]

In this case, Petitioners are homeowners' associations and individuals on those respective associations' boards. Respondents are developers, the law firm that represented them, and an attorney from that law firm. Respondents filed a SLAPP against Petitioners, who eventually secured a dismissal of the SLAPP under CJP § 5-807. Petitioners then initiated the present suit against Respondents, alleging one count of

---

[5] CJP § 5-807(d)(1).

[6] *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 36 (1997) (quoting *Walker v. Am. Sec. & Trust Co. of Washington, D.C.*, 237 Md. 80, 87 (1964)).

[7] *Id.* at 37.

[8] Barker, *supra* n.1, at 434–38. Although Barker's discussion uses the term "malicious prosecution," we have recognized that the torts of malicious use of process and malicious prosecution "share[] the same elements" and that the only difference is that the former stems from a civil suit, while the latter stems from a criminal prosecution. *One Thousand Fleet*, 346 Md. at 36.

malicious use of process. Respondents moved to dismiss Petitioners' suit on the ground that they did not assert a special injury. The circuit court agreed, dismissing the suit, and the Appellate Court affirmed.[9] We issued a writ of certiorari[10] to answer the following question: Did the circuit court err in dismissing Petitioners' claim for malicious use of process for failing to allege a special injury?[11] For the reasons discussed below, we hold that the circuit court did not err in dismissing Petitioners' suit. We, therefore, affirm the judgment of the Appellate Court.

# II
# BACKGROUND

## A. Factual Background

### 1. The underlying zoning matters

In 2003, the Baltimore City Council approved a development project known as the Clipper Mill Planned Unit Development ("PUD")[12] to redevelop an abandoned industrial

---

[9] *Council of Unit Owners of the Millrace Condo., Inc. v. Shapiro Sher Guinot & Sandler, P.A.*, No. 1112, 2025 WL 3227722, at *2 (Md. App. Ct. Nov. 19, 2025).

[10] *Council of Unit Owners of the Millrace Condo., Inc. v. Shapiro Sher Guinot & Sandler, P.A.*, 493 Md. 169 (2026).

[11] We have rephrased the original question for which this Court granted certiorari review: "Can the victims of an action determined to be a . . . SLAPP . . . pursuant to [CJP] § 5-807 maintain a cause of action for damages under the malicious use of process doctrine?"

[12] A PUD is synonymous with a "floating zone." *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490, 515 n.20 (2015) (citing *Mayor of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 533 n.9 (2002)). "Floating zones, like special exceptions, partake of presumptive validity, provided certain conditions are met, because the zoning authority included them in its zoning ordinance." *Id.* at 516 n.21 (citing *Huff v. Bd. of Zoning Appeals of Balt. Cnty.*, 214 Md. 48, 62 (1957)). PUDs, therefore, reflect "a

3

site into a mixed-use community development with residential, retail, and office buildings. *MCB Woodberry Dev., LLC v. Council of Owners of the Millrace Condo., Inc.*, 253 Md. App. 279, 288 (2021). Pursuant to the PUD, The Millrace, a residential condominium, and The Homes at Clipper Mill, a residential community, were developed. *Id.* The pertinent documents for each organization, recorded in the Land Records of Baltimore City, established the Millrace Council, "which governs the affairs of [T]he Millrace[,]" and the Clipper Mill Homeowners' Association, "which governs the affairs of The Homes at Clipper Mill." *Id.* at 288–89. We collectively refer to both organizations as "the HOAs."

In 2017, MCB Woodberry Developer, LLC ("Woodberry"), purchased the development site and sought approval from the Baltimore City Planning Commission ("Commission") to amend the PUD.[13] *Id.* at 287, 290–91. Woodberry's desired amendments would have allowed it to construct additional townhomes on previously earmarked land ("the Townhome Project") and to convert an unrestored tractor building into a "mixed-use project[,]" containing residential units, offices, and parking spaces, as

local legislative response to the relative rigidity of Euclidian zoning[.]" *MCB Woodberry Dev., LLC v. Council of Owners of the Millrace Condo., Inc.*, 253 Md. App. 279, 288 n.4 (2021) (quoting *Zimmer Dev. Co.*, 444 Md. at 515). "A distinguishing feature of PUDs is the incorporation of a form of site planning requirement at its inception and/or in the latter stages of the overall approval process, if that process is multi-tiered." *Id.* (quoting *Md. Overpak Corp. v. Mayor of Balt.*, 395 Md. 16, 22 n.4 (2006)).

[13] VS Clipper Mill, LLC ("VS") is "a real property development business in Baltimore City [and] was the [original] developer" for the PUD. *MCB Woodberry Dev.*, 253 Md. App. at 287. At some point prior to October 20, 2021, Woodberry became VS' "successor" in the ensuing litigation that we discuss. *Id.* at 287 n.1. Thus, although VS was the relevant party at certain times, we will refer to it as Woodberry for consistency.

well as an additional separate garage ("the Tractor Building Project"). *Id.*

The HOAs and board members from each association opposed Woodberry's efforts to amend the PUD.[14] *Id.* at 291. The HOAs submitted letters, testified, and made presentations at Commission meetings to note their disapproval. *Id.* The Commission eventually approved the amendment for the Townhome Project, and the HOAs "filed a petition for administrative mandamus in the circuit court." *Id.* The circuit court held a hearing, declined to reach the merits, and remanded the matter to the Commission "to make findings of fact and conclusions of law in support of its decision." *Id.* at 291–92.

## 2. The retaliatory SLAPP

Four days after the circuit court's hearing, Woodberry filed a lawsuit in the Circuit Court for Baltimore City, alleging claims of breach of contract, tortious interference with economic relations, and civil conspiracy to interfere tortiously. *Id.* at 292. Woodberry sought relief in the form of compensatory damages, $25 million in punitive damages, and declaratory relief. The HOAs moved to dismiss the lawsuit, arguing that it was a SLAPP and that their opposition to further development was protected under CJP § 5-807. *Id.* at 294. Although Woodberry had served discovery requests by that point, it agreed to suspend discovery until the court ruled on the motion.

Five months after Woodberry filed its suit, the circuit court granted the HOAs' motion to dismiss, ruling, among other things, that the lawsuit was a SLAPP. *Id.* at 295. Woodberry appealed, and the Appellate Court of Maryland affirmed, determining that the

---

[14] From this point forward, our use of the designation "HOAs" also refers to the board members from those HOAs who partook in certain actions throughout these legal proceedings.

suit's timing, exorbitant request for punitive damages, overbroad discovery requests, and the suit's conclusory allegations of tortious conduct, demonstrated that the suit was vexatious litigation aimed at deterring the HOAs from opposing Woodberry's development efforts. *Id.* at 312.

After the Appellate Court affirmed the dismissal of Woodberry's suit as a SLAPP, the HOAs filed a motion for attorney's fees under Maryland Rule 1-341 but subsequently withdrew that motion when Woodberry voluntarily paid the HOAs' attorney's fees and expenses incurred as a result of its SLAPP.

## B.   *Procedural History*

### 1. The Circuit Court for Baltimore City

That brings us to the present case. Approximately two years after the Appellate Court affirmed the dismissal of Woodberry's SLAPP, the HOAs filed a class action lawsuit alleging malicious use of process by Woodberry. The HOAs brought their claim against the law firm representing Woodberry in its SLAPP, Shapiro Sher Guinot & Sandler, P.A.; the attorney responsible for drafting the complaint determined to be a SLAPP; Woodberry; and Woodberry's parent company (collectively "Defendants").[15]

The HOAs alleged that Defendants "inflicted a series of unique injuries[,] . . . which would not [have been] present in other suits prosecuted under the same causes of action." Namely, the HOAs alleged that the SLAPP "had [the] effect[ of] . . . fright[ening] and intimidati[ng]" the HOAs from exercising their First Amendment

---

[15] The complaint also named as a defendant an active and controlling member of VS. *See supra* n.13.

6

rights. The HOAs also alleged that the SLAPP amounted to an "unlawful seizure of the [HOAs'] . . . personal property" because Defendants' discovery demands were so broad and pervasive and that such wide-ranging discovery requests are "not normally seen in other litigation requests for preservation of documents in suits pleading similar causes of action." The HOAs also alleged as a special injury the fact that the SLAPP prevented "prospective sales of units" from closing due to "the extraordinary liability that was threatened in bad faith[]" and caused decreases in sale prices for units that did sell.

Defendants filed a motion to dismiss, arguing, among other things, that the HOAs did not sufficiently allege three of the elements for a claim of malicious use of process, including a special injury. The circuit court granted Defendants' motion to dismiss on two grounds, including that the HOAs had not suffered a special injury.[16] The HOAs timely appealed.

## 2. The Appellate Court of Maryland

In an unreported opinion, the Appellate Court affirmed the circuit court's grant of the motion to dismiss. *Council of Unit Owners of the Millrace Condo. Inc. v. Shapiro Sher Guinot & Sandler, P.A.*, No. 1112, 2025 WL 3227722, at *2 (Md. App. Ct. Nov. 19, 2025).[17] The HOAs argued that the SLAPP "by definition" caused the special injury

---

[16] The circuit court's other basis for dismissal was that certain of the plaintiffs had not been named as defendants in the SLAPP suit and, therefore, were not appropriate class representatives in a class action lawsuit for malicious use of process.

[17] In Appellate Court, the HOAs argued that the circuit court erred "in dismissing the HOAs' class claims for naming putative class members who were not parties to the underlying SLAPP[.]" *Shapiro*, 2025 WL 3227722, at *2. The Appellate Court rejected

because the nature of the suit was to prevent the parties from exercising their constitutional rights. *Id.* at *4. The Appellate Court disagreed. In its view, neither its opinion in *Hooke v. Equitable Credit Corp.*, 42 Md. App. 610 (1979), nor this Court's opinion in *One Thousand Fleet Ltd. Partnership v. Guerriero*, 346 Md. 29 (1997), supported the HOAs' position. *Id.* at *6. The court recognized that being subjected to a bad-faith suit has real, cognizable impacts but that our case law nevertheless requires a showing of special injury to recover under a malicious use of process claim. *Id.* at *7. Furthermore, any effects on the sale prices of the units were, in the Appellate Court's view, "ordinary results of litigation." *Id.* While the Appellate Court recognized that the HOAs "may well have suffered real economic effects of facing their respective legal challenges," those effects "are typical of those caused by litigation." *Id.* "In other words, the HOAs' bare allegations of property devaluation do not constitute special injury sufficient to plead malicious use of process." *Id.* While empathizing with the HOAs about the stresses often associated with a lawsuit, it nevertheless maintained that a successful SLAPP litigant "must plead more under our case law to show special injury." *Id.*

## III
## STANDARD OF REVIEW

On review of a circuit court's motion to dismiss, "[w]e assume the truth of all relevant and material facts that are well pleaded, as well as the inferences that can be reasonably drawn from those pleadings, in the light most favorable to the nonmoving party." *Mayor of Balt. v. B.P. P.L.C.*, 493 Md. 427, 452 (2026) (citing *Wheeling v. Selene*

---

that argument. *Id.* at *2, *7–8. The HOAs did not seek review of that holding in this Court, so we do not address further that aspect of the Appellate Court's opinion.

*Finance LP*, 473 Md. 356, 374 (2021)). We review whether the court was correct in its grant of a motion to dismiss without deference because "where questions of law . . . are presented, this Court reviews them de novo." *Bowens v. State Farm Mut. Auto. Ins. Co.*, 492 Md. 608, 615–16 (2025) (citation modified) (quoting *Wheeling*, 473 Md. at 373).

## IV
## ANALYSIS

The HOAs argue that they have incurred special injury as victims of a SLAPP or, in the alternative, that we should create a carve out for SLAPPs and hold that defendants in a SLAPP per se incur a special injury. We disagree with the former and decline to undertake the latter. We begin our analysis by tracing the historical roots of the tort of malicious use of process and the public policy rationale behind the element of special injury and by situating Maryland's anti-SLAPP statute within that common-law landscape. Applying that background to this case, the HOAs have not alleged a special injury recognized under our settled case law, and we decline to adopt their proposed rule that a SLAPP, by its nature, causes a special injury under a malicious use of process claim. We, therefore, affirm the judgment of the Appellate Court.

### A. *The Common Law Tort of Malicious Use of Process and Maryland's Anti-SLAPP Statute*

As the HOAs ask this Court to recognize their alleged injuries as special injuries pursuant to a claim of malicious use of process, an exploration of the history and contours of that tort is instructive. Maryland has long recognized the tort of malicious use of process, but it has been carefully circumscribed since its earliest articulation. At early common law, a defendant who had been sued maliciously and without probable cause

9

could bring a separate action for malicious prosecution against the unsuccessful plaintiff, even if the only harm suffered was the expense of defending the malicious suit. *See Owens v. Graetzel*, 149 Md. 689, 694 (1926) ("It is generally recognized that at common law an action would lie for the prosecution of a civil action maliciously and without probable cause, even if no special damage were inflicted on the defendant therein other than the expense of making his defense."). The Statute of Marlborough, 52 Hen. III (1267), changed that. *Id.* By permitting the prevailing defendant in the original action to recover both their costs *and* damages in the same proceeding as the suit deemed to be malicious, the statute rolled the available remedy into the underlying case and obviated the need for a separate follow-on action. *Id.* The Statute of Marlborough was, thus, understood to supersede the malicious use of process suit altogether, except in the limited class of cases in which the malicious suit had inflicted some harm beyond the ordinary burdens of litigation: a wrongful arrest of the person, a seizure of property, or other special injury that would not necessarily result from a similar cause of action. *See id.* ("The effect of this statute was to supersede the subsequent action for the malicious prosecution of a civil suit, unless there was a wrongful arrest of the person, or seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for like causes." (citation omitted)).

The common law tort for malicious use of process that emerged from this English framework—commonly called the "English rule"[18]—has well-established elements: (1)

---

[18] Maryland adopted the English rule in *McNamee v. Minke*, 49 Md. 122, 134 (1878). *See Wesko v. G.E.M., Inc.*, 272 Md. 192, 195 n.1, 196 (1974) (recognizing

the defendant initiated a prior civil proceeding; (2) the prior suit was initiated without probable cause;[19] (3) the prior suit was initiated with malice;[20] (4) the prior suit terminated in favor of the plaintiff; and (5) the plaintiff suffered an arrest of their person, seizure of their property, or other special injury that would not necessarily result in all suits prosecuted to recover for a like cause of action. *Id.* at 695. As with any cause of action, all elements "must co-exist in order to maintain" a claim for malicious use of process. *One Thousand Fleet*, 346 Md. at 41.

The fifth element, "special injury," reflects a deliberate, century-old public policy balance. *Owens*, 149 Md. at 694–95. As we explained in *Owens*:

> Actions for the malicious prosecution of civil suits are not encouraged, because public policy requires that parties may freely enter the courts to seek redress and relief and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.

---

*McNamee* as the first Maryland case to adopt the English rule for malicious use of process claims). We have adhered to the English rule ever since. *See N. Point Constr. Co. v. Sagner*, 185 Md. 200, 207 (1945) ("Maryland has steadfastly adhered to the so-called 'English' rule that no action will lie for the malicious prosecution of a civil suit when there has been no arrest of the person, no seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action.").

[19] Probable cause, for purposes of malicious use of process, means "a reasonable ground for belief in the existence of such a state of facts as would warrant institution of the suit or proceedings complained of." *N. Point Constr.*, 185 Md. at 208–09 (quoting *Owens*, 149 Md. at 696).

[20] Malice, for purposes of malicious use of process, means "that the party instituting proceedings was actuated by an improper motive[,]" and it may be inferred from a lack of probable cause. *One Thousand Fleet*, 346 Md. at 37; *see also Keys v. Chrysler Credit Corp.*, 303 Md. 397, 408 n.7 (1985) ("[P]roof of malice does not require evidence of spite, hatred, personal enmity or a desire for revenge." (citing *Exxon Corp. v. Kelly*, 281 Md. 689, 700 (1978))).

11

*Id.* Without that limitation, "a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and so there would be a piling of litigation on litigation without end." *Id.* at 695; *see also One Thousand Fleet*, 346 Md. at 37 ("Public policy requires that citizens be free to resort to the courts to resolve grievances without fear that their opponent will retaliate with a malicious use of process lawsuit against them." (citation omitted)). Because of that careful balancing, "[s]uits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against." *N. Point Constr. Co. v. Sagner*, 185 Md. 200, 206 (1945).

Our case law helps illustrate what constitutes a special injury. In *Keys v. Chrysler Credit Corp.*, we held that a special injury existed where a creditor obtained a writ of garnishment attaching the plaintiff's wages on a debt she had fully satisfied more than four years earlier. 303 Md. 397, 401, 410 (1985). That "attachment of a portion of her wages for a period of time . . . constitute[d] proof of deprivation of the use and possession of her property" that satisfied the special injury requirement. *Id.* at 410.

In *H.P. Rieger & Co. v. Knight*, a business owner suffered a special injury where he had been enjoined, maliciously and without probable cause, from making use of his own business property. 128 Md. 189, 195–96 (1916). We reasoned that "[i]njunctions are sometimes as injurious and disastrous as where there has been an actual seizure of property[.]" *Id.* at 196.

And, in *Hooke v. Equitable Credit Corp.*, the Appellate Court held that, but for a wrongfully pursued judgment lien, the appellants would not have suffered a mortgage foreclosure on their property, which constituted a special injury. 42 Md. App. at 614–15.

The common thread running through these cases is that, in each, the legal process was used to dispossess an individual of property (either actually or in effect)—not merely to inflict the ordinary expense and inconvenience of having to defend a lawsuit.[21]

Our cases equally have made clear the category of harms that *do not qualify* as a special injury. *One Thousand Fleet* is particularly illustrative. There, a real estate developer brought a claim for malicious use of process against opponents of its planned project, alleging that the opponents' lawsuits challenging the project were instituted without probable cause, with malice, and caused substantial economic loss. 346 Md. at 40–41. We affirmed dismissal of the developer's suit, explaining that the developer's alleged damages—inability to obtain final financing for the development, delays that increased costs, and loss of rental revenue—were no different than normal damages suffered as a result of any legal zoning challenge "regardless of whether the zoning challenge was rightfully or wrongfully instituted." *Id.* at 44. In essence, we reiterated that the ordinary expense and burden of defending litigation is not a special injury. *Id.*; *see also Walker v. Am. Sec. & Tr. Co. of Washington, D.C.*, 237 Md. 80, 90 (1964) ("Mere annoyance and the expense of defending a civil action are not enough . . . .").

---

[21] While we have found no case in Maryland alleging as its special injury the arrest of an individual, our case law is clear that such injury is considered a special injury for the purpose of a claim for malicious use of process. *See, e.g.*, *Owens*, 149 Md. at 695.

13

Likewise, injury to reputation is not a special injury because "[a]ny unfounded suit may result in such injury[.]" *Bartlett v. Christhilf*, 69 Md. 219, 231 (1888). So too for generalized emotional distress and humiliation. *See Gilbert v. Bach*, 697 F. Supp. 202, 203 (D. Md. 1988) ("Neither the generalized emotional distress, humiliation, *et cetera*, alleged by the plaintiff . . . is cognizable as special injury under the Maryland law of malicious civil prosecution." (citing *McNamee v. Minke*, 49 Md. 122, 133–35 (1878); *Keys*, 303 Md. at 407)). Those harms attend nearly every civil suit—malicious or not—and, therefore, are not "special" in the sense contemplated under a cause of action for malicious use of process. They are simply the ordinary costs and stresses of litigation.

Against this settled common law backdrop, the General Assembly enacted Maryland's anti-SLAPP statute in 2004. *See* CJP § 5-807; 2004 Md. Laws, ch. 279. Before analyzing that statute, we recount our principles of statutory interpretation:

> We start with the cardinal rule of statutory interpretation—to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute. We assume that the General Assembly's intent is expressed in the statutory language and therefore begin our analysis with the plain language of the statute. We begin this task by looking to the normal, plain meaning of the text, ensuring that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.
>
> *         *         *
>
> If we are satisfied that the statute's plain language is unambiguous and clearly communicates the General Assembly's intent, then our inquiry ends, and we apply the statute as written, without resort to other rules of construction.

*Caruso Builder Belle Oak, LLC v. Sullivan*, 489 Md. 346, 365–66 (2025) (citation modified).

In its current form, CJP § 5-807 provides that a lawsuit is a SLAPP if the suit is

(1) Brought in bad faith against a party who has communicated with a federal, State, or local government body or the public at large to report on, comment on, rule on, challenge, oppose, or in any other way exercise rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding any matter within the authority of a government body or any issue of public concern;

(2) Materially related to the defendant's communication; and

(3) Intended to inhibit or inhibits the exercise of rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights.

CJP § 5-807(b). A defendant in a SLAPP is not civilly liable for the protected communication, *id.* § 5-807(c), and may move to dismiss the suit or to "[s]tay all court proceedings until the matter about which the defendant communicated to the government body or the public at large is resolved[,]" *id.* § 5-807(d)(2). The statute underwent a minor revision in 2010 to extend its reach to communications on any "issue of public concern[,]" *see* 2010 Md. Laws, ch. 368 (S.B. 990), but has otherwise remained unchanged since its enactment.

It is important to note what CJP § 5-807 does and does not do. Although the statute confers on a SLAPP defendant immunity from the underlying communication with the government entity, *see* CJP § 5-807(c), it is otherwise quite modest in any recourse it provides to a SLAPP defendant. It confers a right to *move* for dismissal or a stay, the former of which requires the court to hold a hearing "as soon as practicable[.]" CJP § 5-807(d)(1). What the statute does not do is give a SLAPP defendant a right to dismissal or entitle them to attorney's fees, costs, or damages if the SLAPP is dismissed.

15

More importantly, however, CJP § 5-807 does not alter the common law elements for malicious use of process or create a new cause of action carrying enhanced or automatic damages. The plain language confirms as much: It "[d]oes not diminish any equitable or legal right or remedy otherwise available to a defendant in a SLAPP[.]" *Id.* § 5-807(e)(2). The General Assembly, thus, made abundantly clear that the anti-SLAPP statute does not displace whatever available recourse a SLAPP defendant otherwise possesses; rather, CJP § 5-807 simply adds to that list of pre-existing recourse the modest prospect of having the SLAPP dismissed.

The statutory history to CJP § 5-807 reinforces what the text plainly indicates. *See Elsberry v. Stanley Martin Cos.*, 482 Md. 159, 186–87 (2022) (noting that consideration of a bill's "amendments that occurred as it passed through the General Assembly, and its relationship to earlier and subsequent legislation" is proper in ascertaining the General Assembly's intent (citation modified) (quoting *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 57 (2003))). When the General Assembly revised § 5-807 in 2010, an earlier amendment to the bill would have required courts to award successful movants their litigation costs and reasonable attorney's fees, and would have authorized "any additional relief, including sanctions on the responding party and its attorneys, as the court finds necessary to deter repetition of the conduct by others similarly situated." 2010 Md. Laws, ch. 368 (S.B. 990). That language was considered and struck before enactment. *Id.* In every session since, in which amendments have been proposed, the General Assembly has declined to enact bills that would expand the relief available under CJP § 5-807, including bills—introduced this past legislative session—that would have adopted the

16

Uniform Public Expression Protection Act. *See* S.B. 251, 449th Gen. Assemb., Reg. Sess. (Md. 2026).[22] The record, thus, reflects a series of deliberate legislative choices to maintain the SLAPP statute in its current form.

**B.    *The Circuit Court Did Not Err in Dismissing the HOAs' Complaint for Malicious Use of Process***

The HOAs advance two related arguments. First, they allege that they have pleaded a cognizable special injury in this case. Second, they argue that a SLAPP per se inflicts a special injury on its targets. We reject both arguments.

**1. The HOAs did not plead a special injury**

The injuries pleaded in the HOAs' complaint—litigation expenses, temporary diminution in property value, anxiety, and emotional distress associated with defending a meritless lawsuit—do not differ in kind from the burdens that attend the defense of any civil action. Our case law has rejected these injuries as insufficient to satisfy the special injury requirement under a cause of action for malicious use of process. *See One*

---

[22] S.B. 221, 430th Gen. Assemb., Reg. Sess. (Md. 2012); H.B. 263, 436th Gen. Assemb., Reg. Sess. (Md. 2016); S.B. 768, 439th Gen. Assemb., Reg. Sess. (Md. 2019); S.B. 1042, 441st Gen. Assemb., Reg. Sess. (Md. 2020); S.B. 162, 442nd Gen. Assemb., Reg. Sess. (Md. 2021); S.B. 315, 444th Gen. Assemb., Reg. Sess. (Md. 2022); S.B. 619, 445th Gen. Assemb., Reg. Sess. (Md. 2023); S.B. 568, 446th Gen. Assemb., Reg. Sess. (Md. 2024); S.B. 167, 447th Gen. Assemb., Reg. Sess. (Md. 2025); S.B. 251, 449th Gen. Assemb., Reg. Sess. (Md. 2026). S.B. 251, the most recent attempt, would have repealed the existing provisions under CJP § 5-807 and established the Maryland Uniform Public Expression Protection Act (UPEPA). 2026 S.B. 251, Fiscal and Policy Note, at 1 (Jan. 27, 2026). Among other things, S.B. 251 would have provided an expedited process to resolve a motion to dismiss; directed courts to dismiss with prejudice any cause of action found to be a SLAPP; and required the award of court costs, reasonable attorney's fees, and litigation expenses to the prevailing movant. *Id.* at 2–3. The Maryland UPEPA would have been modeled after the UPEPA created by the Uniform Law Commission in 2020. *See Public Expression Protection Act*, Uniform Law Commission (2020), https://perma.cc/KE6U-54NL.

*Thousand Fleet*, 346 Md. at 44 (normal cost and expense of litigation); *Bartlett*, 69 Md. at 231 (harm to business reputation); *see also Gilbert*, 697 F. Supp. at 203 (holding that generalized emotional distress is not cognizable as a special injury in a claim for malicious use of process under Maryland law). While those harms are real and may be substantial, they are not the kind of special injury, such as seizure of person or property, that the cause of action requires.

That conclusion is reinforced by what the underlying litigation here did not entail. The SLAPP produced no arrest or seizure of persons, no garnishment, no liens, no injunction against the use of the HOAs' property, and no foreclosures. Discovery was stayed by agreement of the parties.[23] The SLAPP was dismissed under CJP § 5-807(d) within five months of its filing, and Defendants voluntarily paid the HOAs' attorneys'

---

[23] In their complaint, the HOAs allege that the discovery requests served on them "effectively resulted in an unlawful seizure . . . of personal property" because Defendants requested that the HOAs "preserve all documents and electronic materials related to every aspect of their personal and professional lives[]" so that Defendants "would be able to scrutinize the materials under color of law." The discovery request's "grotesque and vindictive scope[,]" says the HOAs, "were far beyond the legitimate need for the preservation of documents and constituted a seizure of personal property[.]" Even accepting that characterization as true, it still does not amount to a special injury.

First, as noted, discovery was stayed. So, at best, the discovery requests can only be said to have, in the HOAs' words, intimidated or harassed them, which, as we have discussed, is not enough to satisfy the element of special injury. *See Gilbert*, 697 F. Supp. at 203. Second, even if discovery were not stayed, there are other legal avenues to protect a party from overburdensome discovery requests. *See* Md. R. 2-403(a) (permitting a party to seek a protective order with respect to a discovery request). The solution is not, as the HOAs would have it, to allow overly broad discovery requests to satisfy the element of special injury in a claim for malicious use of process. Were we to agree with the HOAs, then claims for malicious use of process would become routine, paying little more than lip service to our recognition that such suits "are viewed with disfavor in law and are to be carefully guarded against." *N. Point Constr. Co.*, 185 Md. at 206 (citation omitted).

18

fees and costs. *MCB Woodberry Dev.*, 253 Md. App. at 295. The anti-SLAPP statute operated precisely as the General Assembly designed—modestly, but effectively.

**2. A SLAPP, in and of itself, is not a special injury**

Recognizing the difficulty of prevailing on the special-injury element under existing law, the HOAs ask us to take the larger step of holding that the filing of a SLAPP, by its bad-faith nature, satisfies the special-injury requirement. The HOAs argue that the "special injury [requirement]" should not be permitted to protect those who file SLAPPs for "[i]llicit [p]urposes[,]" and that dismissal of their malicious use of process suit is "inconsistent with the constitutional values" promoted in the anti-SLAPP statute. They rely chiefly on *LoBiondo v. Schwartz*, 733 A.2d 516, 534 (N.J. Super. Ct. App. Div. 1999) ("*LoBiondo I*"), for the proposition that challenges to freedoms of speech "attendant upon the filing of . . . a SLAPP suit and the constraint the suit imposes upon the exercise of those freedoms . . . satisfy the special grievance element." Their arguments are unpersuasive.

*First*, the Supreme Court of New Jersey itself has limited the reach of the language the HOAs quote. Ten years after *LoBiondo I*, the court took up the same dispute on further review and substantially curtailed the intermediate court's reasoning. *LoBiondo v. Schwartz*, 970 A.2d 1007, 1037 (N.J. 2009) ("*LoBiondo II*"). It held that, for the chilling of constitutional rights to support a claim for malicious use of process, the right must have been actually infringed upon. *Id.* "The special grievance," the court explained, "must be a real one, not just a convenient label affixed so as to relieve the party of one of the essential elements of the cause of action," and the court was explicit that it would not

embrace any reading of *LoBiondo I* inconsistent with that requirement. *Id.* Even if we were inclined to follow *LoBiondo II*'s holding as to the chilling of First Amendment rights, the HOAs would still fail the Supreme Court of New Jersey's test. Here, the HOAs freely exercised their constitutional rights by attending Commission meetings and voicing their opposition to Defendants' development. The HOAs' complaint alleges only that the SLAPP was intended to retaliate against them for that opposition. Their complaint contains no allegation that the HOAs *actually* ceased, or even curtailed, their participation in the underlying zoning matters or in any other public proceeding after the SLAPP was initiated. Thus, even under controlling New Jersey law, the HOAs would not succeed on their claim.[24]

*Second*, the HOAs conflate the "bad faith" requirement in the anti-SLAPP statute, CJP § 5-807(b)(1), with the element of special injury in a claim for malicious use of process. They argue that, in essence, we are deciding whether the element of special

[24] The HOAs assert that "[n]o court in this state has ever considered the meaning of . . . [the other special injury] phrase" and contend that it must mean "something other than seizure of property, or else it is mere surplusage." But "judicial opinions are not statutes, and we don't dissect them word-by-word as if they were." *Fooks v. State*, 490 Md. 458, 554 (2025) (Biran, J., dissenting) (quoting *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting)). The better reading of our case law is that, while we have recognized that an arrest of the person and the seizure of property satisfy the special-injury requirement, we have not foreclosed the possibility that other injuries may also satisfy that requirement. The HOAs' complaint contains no allegation tying any specific injury to the chilling of their First Amendment right to free speech. While we do not foreclose the possibility that a sufficiently pleaded chilling of one's First Amendment rights could satisfy the special-injury requirement, any such right must be actually infringed upon, and bald allegations supported by no evidence will not do. *See LoBiondo II*, 970 A.2d at 1037 (holding that speech infringement may be actionable under a malicious-use-of-process claim where the right was actually infringed upon, and that "simply calling the initial claim a SLAPP . . . will not be enough to carry the burden of proving a special grievance[]").

20

injury for a malicious use of process claim "grants an immunity to a bad faith litigant whose sole purpose is to prevent or punish the exercise of constitutional rights." Bad faith—or malice—and special injury are independent elements in a claim for malicious use of process; the presence of the former does not establish the latter. The prior proceeding against the HOAs was indeed instituted in bad faith, which contributes to the equation for both the SLAPP and the claim for malicious use of process. But that fact alone does not mean that the HOAs have suffered a special injury, as the Appellate Court correctly observed. *See Shapiro*, 2025 WL 3227722, at *6 ("Here, the prior challenge— the SLAPP suit—was indeed instituted wrongfully. However, the wrongfulness does not automatically equate to special injury."); *see also Shamberger v. Dessel*, 236 Md. 318, 321 (1964) (holding that delay in possession of property was not a special injury because "damages can not be predicated upon the filing of a caveat to a will even though the caveat was filed maliciously and without probable cause[]" (citation omitted)). The HOAs' reframing of what is essentially equal treatment is unpersuasive. The HOAs—like all other plaintiffs—must adequately plead all elements for a cause of action they assert. That one of the elements in the cause of action they have pursued is difficult to prove is not a hurdle that only they will have to overcome. Nor, as just discussed, do we definitively close the courthouse door to future arguments about the effects of a SLAPP on an individual's protected constitutional rights. *See supra* n.24.

*Third*, and most fundamentally, the per se rule that the HOAs propose is the very legislative choice that the General Assembly has declined to make. Under certain circumstances, the failure to enact legislation can be evidence of legislative intent,

21

particularly "where bills have repeatedly been introduced in the General Assembly to accomplish a particular result, and where the General Assembly has persistently refused to enact such bills." *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 694 (2013) (quoting *Moore v. State*, 388 Md. 623, 641–42 (2005)). The General Assembly is presumed to have legislated against the backdrop of the common law tort of malicious use of process, and CJP § 5-807's enactment and later revision reflect a deliberate choice not to confer on SLAPP victims an automatic right to obtain damages under that statute or through that tort. The General Assembly gave SLAPP defendants procedural tools while leaving the common law cause of action for malicious use of process—and the element of special injury that gates it—undisturbed. When the General Assembly has spoken on matters of public policy in a particular area, we "decline to enter the public policy debate, even when it is the common law that is at issue[.]" *Id.* at 694 (quoting *Mayor of Balt. v. Clark*, 404 Md. 13, 36 (2008)).

As discussed above, when the General Assembly enacted and later revised CJP § 5-807, it specifically considered and rejected language that would have authorized damages and "additional relief" designed to deter SLAPPs. It has, over the course of many sessions, persistently declined to expand the statute's remedies, *see supra* n.22, and we will not, by judicial fiat, install a remedy that the General Assembly has consistently declined to enact. If the legislative balance struck in CJP § 5-807 is too modest to adequately deter SLAPPs, then that is a matter for the General Assembly to revisit. It is

22

not a matter we will undertake by relaxing an element in an unrelated action under the common law.[25]

## V
## CONCLUSION

For the foregoing reasons, we hold that the dismissal of a SLAPP under CJP § 5-807 does not, without more, satisfy the special-injury element of a subsequent claim for malicious use of process. The HOAs' complaint fails to allege facts showing arrest of the person, seizure of property, or other special injury that would not necessarily result from the ordinary defense of similar civil suits. The circuit court was correct to dismiss the HOAs' complaint alleging malicious use of process, and we accordingly affirm the judgment of the Appellate Court of Maryland.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. PETITIONERS TO PAY COSTS IN THIS COURT.**

---

[25] In their opening brief, the HOAs also ask this Court to "eliminate the 'special injury' rule in cases involving abusive SLAPP litigation—a narrow range of well-defined cases that the legislature has deemed inimical to the public good." At oral argument, the HOAs sought to recast that request: The special-injury rule, they say, "should stay intact," but the Court should "recognize that it has no application here because its foundation, the need to encourage access to the courts, is not present with a bad-faith lawsuit that is filed simply as a fraudulent way to punish people." This shift in framing is ultimately a distinction without a difference. Holding that a SLAPP victim per se suffers a special injury and holding that the element has "no application" to a SLAPP operate identically. Either iteration would relieve a SLAPP victim of making the showing we have required of every other plaintiff alleging malicious use of process. Whether labeled as a per se satisfaction or an exemption, the relief the HOAs seek is the same, and we reject both formulations of the argument.